# THE VONDERHORST BREWING CO. ET AL. *vs.* CHARLES H. AMRHINE.

*Negligence—Collision of Wagons—Swerving From Course—Proof of Ownership of Wagon and Agency of Driver—Action Against Two Defendants—Sufficiency of Evidence of Driver's Negligence—Contributory Negligence—Instructions to the Jury—Special Exceptions—Motion in Arrest for Matters Dehors the Record.*

In an action against a Brewing Company to recover damages for an injury caused by the driver of its wagon, evidence that the name of the Brewing Co. was on the wagon and that it was owned by the company is sufficient to authorize the jury to infer that the driver of the wagon was the agent of the company at the time of the commission of the tort.

An action was brought against the V. Co. and the Md. Co. to recover damages for an injury caused by the driver of a wagon. It was admitted at the trial that the wagon belonged to the Md. Co. *Held*, that a prayer denying the right of the plaintiff to recover against either defendant was properly rejected if there was evidence of negligence on the part of the driver.

Plaintiff driving his wagon east on the right hand side of a street came to an intersecting street when he saw defendant's brewery wagon coming south on the left hand side of the cross street towards the intersection. When the driver of the brewery wagon reached this point he first turned his horse to the left, as if intending to go east in the same direction that plaintiff was going but suddenly drew his horses to the right to continue the former course. In consequence of this sudden change of direction the wheel of the brewery wagon struck and broke the pole of the plaintiff's wagon, which frightened the horses causing them to run

away, and plaintiff was thrown out and injured. *Held*, that since the defendant's driver was on the wrong side of the road and suddenly changed his course, apparently without looking to see whether he would come into contact with plaintiff's wagon, there is sufficient evidence of defendant's negligence to go to the jury.

*Held*, further, that there is no evidence in the case of plaintiff's contributory negligence, and although after the pole of his wagon was broken he made an effort to avoid collision with a cart, yet this was not the direct cause of the injury inflicted when he was afterwards thrown out.

In the above case the defendant asked the Court to instruct the jury that if they found that when the accident occurred the plaintiff was driving in a negligent manner "then the negligent driving of the plaintiff contributed to produce the injury." *Held*, that this instruction was properly refused because it assumes that plaintiff's negligent driving contributed to cause the injury, whereas the plaintiff could have been driving negligently and yet that negligence might not have had any causal relation to the accident.

A prayer of the defendant in this case was erroneous when it assumed that the plaintiff was not driving a reasonably safe horse with ordinary care and there was no evidence that the horse was not reasonably safe. The mere fact that one of plaintiff's horses had run away on a previous occasion, when frightened, does not show that it was not reasonably safe.

The objection that an instruction to the jury assumed certain facts, or that the evidence in the case was insufficient to support its hypothesis, will not be considered on appeal unless a special exception thereto was taken in the trial Court.

A judgment will not be arrested except for substantial error apparent upon the face of the record, and extrinsic matters not so appearing are not available upon motion in arrest.

After the rendition of a judgment against a Brewing Co. it made a motion in arrest on the ground that it had previously been put in the hands of receivers by an equity Court, and that the receivers were not parties to the action, nor had the equity Court authorized the suit against them. *Held*, that this defense should have been specially pleaded and cannot be made the ground for a motion in arrest of the judgment.

Appeal from Baltimore City Court (SHARP, J.), where there was a verdict and judgment for the plaintiff against both defendants for $7,000.

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*Thos. R. Clendinen* and *Albert E. Donaldson* (with whom were *Robert Crain, O. F. Hershey* and *Carrington & Carrington* on the brief ), for the appellants.

*Howard Bryant* (with whom was *Chas. F. Stein* on the brief), for the appellee. The Court declined to hear *John S. Young*, also for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

This is a negligence case. Suit was brought by Charles H. Amrhine against the Vonderhorst Brewing Company of Baltimore, a body corporate, and the Maryland Brewing Company of the same city, also a body corporate, to recover damages for injury to himself and to his personal property, which was sustained by him in consequence of the alleged negligence of the servants of the two corporations, in driving a heavy brewery wagon into the wagon of the appellee. The collision occurred at the intersection of Baltimore street and Patterson Park avenue in Baltimore City on the 11th of December, 1900. The declaration alleges that the wagon which the appellee was driving was struck and run into by one of the wagons belonging to the appellants ; that the latter wagon was then under the direction and control of the agents and servants of the appellants and was being driven in a negligent and careless manner, and that by reason of the collision thus brought about the appellee was violently thrown from his wagon and was seriously, painfully and permanently injured ; and that the injuries thus sustained were caused solely by the negligence and carelessness of the appellants, their agent and servant, and not by any negligence on the part of the appellee. To this declaration both defendants pleaded that they did not commit the wrongs alleged and upon this plea issue was joined. The jury was sworn and after a trial a verdict was rendered against both defendants and in due season, after a motion in arrest of judgment and for a new trial had been overruled, judgment was entered upon the verdict, and from that judgment both of the defendants below have appealed.

In brief outline the facts relied on by the appellee to sustain the action are these : The appellee, who was a baker by occupation, was driving his bread wagon, drawn by two horses, along the south side of Baltimore street going east, and as he approached Patterson Park avenue, which intersects Baltimore street at right angles, he observed the brewery wagon coming south on the east or left hand side of Patterson Park avenue, towards Baltimore street. As the driver of the brewery wagon reached the north side of Baltimore street at its intersection with Patterson Park avenue, he suddenly turned the heads of his horses to the left as if intending to go east on Baltimore street in the same direction that the appellee was driving, but instead of pursuing that course, he quickly drew his horses to the right to continue a direct course across Baltimore street and to go south of the latter street on Patterson Park avenue. At that moment, and in consequence of that sudden change of direction and by reason of his failure to look where he was going, the wheel of the brewery wagon came in contact with the pole of the appellee's bread wagon and broke the pole, frightened the appellee's horses and they started at a rapid gait down the grade at that point, the wagon running in a zig-zag course, until it struck the curb near Milton avenue, where the appellee was thrown out and seriously and painfully injured. At the close of the plaintiff's case, the defendants asked the Court to instruct the jury that there was no evidence in the case legally sufficient to entitle the plaintiff to recover but that prayer was rejected and an exception was thereupon reserved. After this action of the Court the defendants below, the appellants here, proceeded to offer evidence in defense and that step constituted a waiver of their first exception. *Barabasz* v. *Kabat*, 91 Md. 53. When the evidence upon both sides was closed, the appellee presented one, and the appellants offered eight prayers for instructions to the jury. The appellee's prayer was granted as were also the second, fourth and fifth prayers of the appellants, whilst their first, third, sixth, seventh and eighth prayers were rejected. Their first prayer is a repetition of the one offered at the con-

clusion of the plaintiff's case, as already stated, and again the Court was asked to say to the jury that there was no evidence in the case legally sufficient to entitle the plaintiff to recover.

The main contention in the case is that which is raised by the prayer just alluded to. The alleged dearth of evidence consists, according to the contention of the appellants, in a failure on the part of the appellee to prove that the driver of the brewery wagon was a servant of either of the appellants; secondly, in an omission to show that the Vonderhorst Company owned or had any interest in the brewery wagon which collided with the appellee's conveyance; and finally in a total absence of proof to establish negligence in the driver of the brewery wagon; whilst it is also insisted that the injury resulted from the contributory negligence of the appellee himself. There are a few subsidiary questions arising on other rejected prayers and on the appellee's granted instruction, besides some collateral objections assigned as grounds for reversal, which the appellants have brought to our attention upon a motion in arrest of judgment filed in the trial Court after verdict. We will deal with these in the order just named.

*First*, then, as to the identity of the driver, that is to say, as to whether there was evidence from which the jury could legitimately infer that the driver of the brewery wagon was the agent of the defendants. There is evidence in the record showing that the wagon which collided with the plaintiff was owned by the Vonderhorst Brewing Company. And there is also evidence, adduced by the defendants, that the wagon which ran into the plaintiff's team had on it the name of the Vonderhorst Brewing Company. These facts were sufficient to justify the jury in concluding that the driver of the wagon was the agent of the owner of the wagon. That proposition was expressly sustained by LORD CHIEF JUSTICE DENMAN in the case of *Joyce* v. *Capel and Slaughter*, 8 Car. & Pay, 370. It was there held that in an action for damages done to the plaintiff's lug-boat by the negligence of the defendant's servant in steering the defendant's barge, when it was proved that the barge was the defendants' but the plaintiff's witnesses ·

could not identify the barge-man who was steering the barge, that this was *prima facie* evidence that the barge was steered by the defendants' servant, and that if the barge was on hire or was taken by any other person, it lay on the defendants to show that. And so in the case of *Edgeworth* v. *Wood*, 58 N. J. L. 463, s. c. 33, Atl. Rep. 940, following the decision of LORD DENMAN, it appearing in an action against an express company for negligence in running over the plaintiff by a wagon drawn by two horses, that the wagon was painted in a peculiar manner and marked with the name of the express company and a peculiar device used by it; the Supreme Court of New Jersey held that the evidence that the wagon which ran over the plaintiff was so painted and marked, was sufficient to justify the inference that the defendant express company was its owner, and that such inference established *prima facie* that the company was in possession and control of the wagon by the driver as its servant. Other cases to the same effect might be cited but it is not deemed necessary to allude to them because the proposition is quite self-evident. It is a reasonable presumption that a person driving the team of another is the agent or servant of the owner of the team, unless it be shown by the owner of the team that the contrary is the fact.

*Secondly,* the evidence is explicit that the brewery wagon belonged to the Vonderhorst Company. At the conclusion of the plaintiff's case the counsel for the defendant company admitted in open Court that the wagon of the Vonderhorst Company at the time of the accident belonged to the Maryland Brewing Company. It was further admitted that the wagon which did the injury had painted on its side the words, The Vonderhorst Brewing Company, and that the Maryland Brewing Company was at that time the owner of the wagon. Now if the Vonderhorst Brewing Company had asked the Court to instruct the jury that there was no legally sufficient evidence to entitle the plaintiff to recover against *it*, the Vonderhorst Company, that prayer, under the concession that the wagon belonged to the Maryland Brewing Company, would

probably have been granted, and the Vonderhorst Company would have been relieved from liability; but the prayer which was actually presented, denied the right of the plaintiff to recover against *either* of the defendant companies, and therefore was properly rejected, if there was sufficient evidence before the jury to show negligence on the part of the driver of the brewery wagon. When two defendants are sued for a tort like this, and one is shown not to be answerable, it would be an obvious error, if the other be liable, for the Court to instruct the jury that there is no evidence legally sufficient to entitle the plaintiff to recover at all.

*Third*, as to the alleged negligence of the driver of the brewery wagon. There is, as is almost invariably the case in actions of this character, some conflict in the evidence, though there is practically none on this precise point. If the version of the occurrence as given by the appellee and his witnesses. in their testimony be correct, there was negligence on the part of the driver of the brewery wagon. While in England the rule is that, upon the meeting of vehicles going in opposite directions on the highway, each shall pass to the left, the general rule in this country is that, in such a case, each shall turn to the right. 18 *Am. & Eng. Ency. Law*, 579. Each driver may assume that the other will obey the law of the road and will drive to the right, and each has the right to act on that assumption. *Ib.* 579–580. It is sometimes said that there is a presumption of negligence on the part of a person who is on the wrong side of the road; *Chaplin* v. *Hawes*, 3 Car & Pay. 554; while in other cases it is stated merely that such fact is evidence of negligence to go to the jury. 18 *Am. & Eng. Ency. Law*, 580. There are circumstances which vary the application of the general law of the road; so that an act which under one condition of facts would not be either negligence or evidence of negligence, under other and different surroundings, would be one or the other or both. The general subject is very fully discussed in a note to *Broschart* v. *Little*, 11 L. R. A. 33. It has been held that pulling the wrong rein, whereby a collision occurred, was negligence,

*Wakeman* v. *Robinson*, 1 Bing. 214; and also that it is the duty of a driver to look where he is going and that a failure to do so resulting in an injury is actionable negligence.   *Mc-Closkey* v. *Cha. Lake Ice Co.*, 174 Pa. St. 34; s. c., 34 Atl. Rep. 287.

The driver of the brewery wagon was on the wrong side of the highway.   He suddenly turned eastward on reaching Baltimore street as if intending to go in that direction down that thoroughfare, and then without warning, and apparently without looking to see whether the appellee was in the path that he changed his course to take, he turned sharply to the right to cross Baltimore street just in time to bring his wagon in collision with that of the appellee.   A single glance would have shown him that by making the last turn he would inevitably come in contact with the appellee's approaching wagon, unless the appellee could have checked his own team in time to avoid the contact.   The evidence shows that at that exact point there is quite a steep down grade running east, the direction in which the appellee was driving; that the street was paved with asphalt and that it was difficult for his horses to get a foothold.   It was consequently impossible for the appellee to avoid the collision, which would not have occurred if the driver of the brewery wagon had paid the slightest attention to the presence of the appellee's wagon.   It cannot be said that the collision was an unavoidable accident, unmixed with negligence on the part of the driver of the brewery wagon, because it was the direct consequence of his inattention and apparent recklessness.   Of course, what has just been observed has been stated from the standpoint of the appellee's case as made by his and his witnesses' testimony; and in considering the prayer which sought to take the case from the consideration of the jury, we are bound to give credit to that testimony and to take into consideration every fair and legitimate inference that a jury would be warranted in deducing therefrom.   In that view of the case there was manifestly sufficient evidence of negligence on the part of the driver of the brewery wagon to go to the jury, and it was for them to

pass upon its credibility when contrasted with the conflicting evidence adduced by the defendants.

But it has been strenuously insisted that the plaintiff himself was guilty of contributory negligence directly co-operating to produce the injury which befell him, and that, therefore, he is not entitled to recover. This proposition is not in harmony with the antecedent one, namely, that there was no negligence on the part of the defendants' servant; because if there was no primary negligence on the part of the defendants, there could be no contributory negligence on the part of the plaintiff. Contributory negligence necessarily pre-supposes primary negligence, which would of itself sustain an action but for the concurrence of the contributory negligence. We discover no evidence to justify the contention that the plaintiff was guilty of contributory negligence, though by the second prayer granted at the instance of the appellants the alleged contributory negligence of the appellee was distinctly submitted to the jury to find. It is true after the pole of his wagon had been broken he made an effort to avoid contact with a cart coming in an opposite direction to that in which he was going, but this was subsequent in time to the antecedent negligence ascribed to the defendants, and it cannot be said that this effort of his was the direct cause of the injury which ensued when later on he was thrown from his wagon and hurt. But if that effort was the direct cause of the ultimate injury the jury were told by the appellants' fifth prayer that the appellee could not recover.

It has been objected that the instruction granted upon the request of the appellee, and which is set out in the margin,*

---

*Plaintiff prays the Court to instruct the jury that if they find from the evidence that on December 11th, 1900, plaintiff was driving his team consisting of two horses and a bread wagon and going east on Baltimore street on the south side of said street, and that when he was going across Patterson Park avenue he saw the team of the defendants consisting of two horses and a beer wagon approaching Baltimore street, and that defendants' team was on the east side of Patterson Park avenue going south on Patterson Park avenue as it approached Baltimore street, and that the plaintiff as he was crossing Patterson Park avenue observed the team of the defendants make a turn as if to go east on Baltimore street, and that

was defective because of the assumption of facts therein, and because of the insufficiency of the evidence to support its hypothesis and because of erroneous statements of law ; but it is well settled that these objections cannot be considered by this Court, as no special exception relying upon them, was taken in the trial Court.    If these objections were even well founded, they could not be considered now.    *Gunther v. Dranbauer*, 86 Md. 10.

We now turn to the appellants' third, fifth, sixth, seventh and eighth rejected prayers.    By the *third* prayer, the appellants asked the Court to instruct the jury that it was incumbent on the appellee to show that the injury complained of was caused entirely by the negligence of the appellants' agent in the management of the team which collided with the wagon of the appellee ; but that if the jury should find from the evidence that at the time and place that the accident occurred the appellee was driving his team in a negligent manner "then the negligent driving of the plaintiff contributed to produce the injury of which he complains."    It is obvious that the prayer assumes that which should have been left to the jury for them to find, namely, that the negligent driving

defendants' team did so turn and that the plaintiff then in a careful and prudent manner proceeded to go across Patterson Park avenue on the south side of said avenue where it crosses Baltimore street at right angles, and that the driver of the team of the defendants without any warning then suddenly turned his team in front of the plaintiff's team, cutting off the team of the plaintiff from the plaintiff's right of way in which he was going, and struck the horses of the plaintiff and broke the pole of the plaintiff's wagon as mentioned in the evidence, and that after the sudden turning of the team of the defendants in front of the plaintiff's team the plaintiff could not by the exercise of reasonable care and diligence have avoided the collision, as mentioned in the evidence, and if the jury find from the evidence that by reason of the collision aforesaid the horses of the plaintiff became unmanageable and ran away as mentioned in the evidence, and the plaintiff could not control and manage his said horses after the collision, and that the platntiff was thereby thrown from his wagon as mentioned in the evidence and injured, then the plaintiff is entitled to recover in this action, and if the jury find for the plaintiff then the jury may award him such damages as will compensate him for the injuries, if any, the jury may find from all the evidence he has sustained. ( *Granted.*)

of the plaintiff contributed to produce the injury.  He could have been driving negligently and yet that negligence might not have contributed to the accident or in any way occasioned it.  There may be negligence, but unless it has a causal relation to the injury complained of, it can neither ·constitute a ground of action nor amount to such contributory negligence as will bar an action.  The jury should have been  instructed that if they found from the evidence that the plaintiff was negligent in driving his team and that *that* negligence directly contributed to the occurrence of the accident then there was no right of recovery.  The vice we have just pointed out was sufficient to justify the rejection of this prayer and we need not consider any further criticism upon it.  The *sixth* prayer was properly rejected because it included a fact, as one of its hypotheses, of which there was no evidence in the cause.

Amongst other hypotheses it said "if the plaintiff had been driving a *reasonably safe horse* with ordinary care and skill that the injury complained of in the declaration would not have been sustained," then the verdict must be for the defendants.  There is nothing in the record to indicate that the appellee was not driving *a reasonably safe horse.*  It is true one of his two horses had run away on some prior occasion when he was frightened by "some one squirting water on him," but that incident is no evidence whatever that the horse was not a reasonably safe one. .  The *seventh* prayer is open to several objections.  Among other things it requires the jury to find that by reason of the driver of the brewery wagon being on the east side of Patterson Park avenue and making the turn to the *east* at the intersection of Baltimore street, he directly caused the injury of which the appellee complains.  There is no evidence that it was the turn to the *east* which caused the collision.  On the contrary, if he had proceeded in that direction there would have been no collision, and the whole of the evidence, if creaited by the jury showed, that it was the turn to the east *followed immediately by the turn to the right* that brought the brewery wagon in contact with the appellee's wagon.  Besides this, the prayer wholly omits to

submit to the jury tö find that the driver of the brewery wagon used reasonable care in making either of the two turns. His antecedent care in driving along Patterson Park avenue, where the accident did not happen may be conceded, and yet he might have been negligent at the time and place of the collision; and this the prayer ignores. The *eighth* prayer is defective in submitting to the jury to find that the driver of the brewery wagon was driving in a reasonably careful and diligent manner at the time of and before the collision, when there is no evidence that he was so driving at the *time* of the collision, whatever may have been the case *prior* to the collision.

We are now brought to the questions presented by the motion in arrest of judgment. It appears by that motion, but appears in no other way, that on the 25th of July, 1900, the Vonderhorst Brewing Company had, by a decree of the Circuit Court of Baltimore City, been placed in the hands of receivers and that the receivers were not made parties to this cause, nor was the consent of the Circuit Court obtained permitting them, or the company under the Court's control, to be sued. We need not allude to any of the other reasons assigned in the motion in arrest of judgment, because they all pertain to matters which could not be reviewed in any event by this Court, relating as they do, to questions which only can be considered by the trial Court on a motion for a new trial. It has long been the settled law of Maryland that a judgment can not properly be arrested except for substantial error *apparent upon the face of the record* and that extrinsic or foreign matters not so appearing will be wholly unavailable upon such a motion. *State* v. *Phelps,* 9 Md. 21; *Grover* v. *Turner,* 28 Md. 600; *Poe's Plead.* sec. 750; *P. W. B. R. R. Co.* v. *State, use of Bitzer and others,* 58 Md. 372. Had the Vonderhorst Company, instead of pleading to the merits, filed a separate plea, setting up a receivership, a different situation would have been presented ; but as the record now stands, there is nothing before us to show that the Vonderhorst Company ever went into the hands of receivers at all, because the

motion in arrest of judgment alleging that extrinsic fact does
not bring it before us.    If it be a fact (as doubtless it is), it is
a foreign fact extrinsic to the record and cannot be imported
into the record, after verdict, by an averment contained in a
motion made in arrest of judgment.    It was a matter of defense
which ought to have been pleaded in the first instance and
cannot now be incorporated in the record by a mere motion.

   Upon a review of the whole ᴠcase we find no errors in the
rulings to which exception has been taken, and the judgment
will be affirmed.

                      *Judgment affirmed with costs above
                      and below.*

(Decided January 15th, 1904.)